IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                  *
FRALL DEVELOPERS, INC.,
ET AL.,                           *

     Plaintiffs,                  *

          v.                      *    CIVIL NO.: WDQ-07-1630

BOARD OF COUNTY COMMISSIONERS     *
FOR FREDERICK COUNTY,
                                  *
     Defendant.
                                  *
```

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Frall Developers, Inc. ("Frall"), P.S.R.P., Inc. ("PSRP"),

and Harvest Ridge Associates, LLC ("HRA") have sued the Board of

County Commissioners for Frederick County (the "County"),

alleging that the County breached its obligations under two

Public Works Agreements ("PWAs").[1]  Pending is the County's

motion to dismiss Plaintiffs' Complaint.  For the following

reasons, the County's motion will be granted in part and denied

in part.

---

[1] This is the second time that Plaintiffs have sued the
County over its obligations under the PWAs in this Court.  In the
first suit, Plaintiffs brought claims for impairment of contract,
breach of contract, and inverse condemnation.  The Court granted
the County's motion to dismiss Plaintiffs' impairment of contract
claim, but denied the County's motion as to Plaintiffs' breach of
contract and inverse condemnation claims.  *Frall Developers, Inc.
v. Board of County Comm'rs*, No. WDQ-06-1281, slip op. at 21 (D.
Md. Sept. 7, 2006).  On January 8, 2007, Plaintiffs voluntarily
dismissed their complaint pursuant to Rule 41(a).

1

I.   Background

Plaintiffs are land developers in Frederick County,

Maryland.  Compl. ¶¶ 1-4.  PSRP and HRA own real property in the

Manorwood and Harvest Ridge residential subdivisions in Mount

Airy, Maryland.  *Id.* ¶ 2-3.  Frall has a fifty percent ownership

interest in HRA and PSRP is a wholly-owned subsidiary of Frall.

*Id.* ¶ 4.

In March 1995, Frall, Samhill Family Limited Partnership

("Samhill"), and Harvest Ridge Joint Venture ("HRJV") entered

into two PWAs with the County to construct permanent water and

sewage treatment plants for future residential developments.  *Id.*

¶ 9.  The March 9, 1995 Water Agreement ("Water PWA"), and the

March 21, 1995 Sewer Agreement ("Sewer PWA") governed the

financing, ownership, and construction of these facilities.  *Id.*

Exs. 1-2.  The PWAs provided for a proportional allocation of 400

water and sewage connections ("taps") to the developers.  *Id.* at

¶ 10.  After construction, the PWAs provided for County ownership

and control of the facilities.  *Id.* at ¶ 2.

The PWAs gave the developers options to purchase additional

taps in the future.  *Id.* at ¶ 10.[2]  The PWAs also provided for

─────────────────────

[2] The Water PWA provision provides:

    If the Developers can provide raw water and have
approved preliminary plans on the Subject Properties and
can show need therefor, additional water taps may be
allocated from this System.  If additional water taps are
allocated, the Developers and their respective successors

2

the possibility of a sale of the developers' property:

> Each of the Developers reserves the right, upon the sale of all [or] a portion of their respective Properties, to allocate water [or sewer] taps reserved to it pursuant to this Agreement to any purchaser of all or a portion of their respective Properties, and upon the purchase of water [or sewer] taps by such purchaser, such purchase shall be considered the same as if one of the Developers had purchased the water [or sewer] taps for a portion or all of its Property.  Upon the aforesaid sale, the Developer shall provide the County with a sale letter and the Developer shall agree to indemnify and hold harmless the County from any claims or actions from the sale of the water [or sewer] taps.

*Id.* at ¶ 12.  Under the PWAs, the County retained the right to withhold allocation of the taps: "The allocation of the 400 or any additional water [or sewer] taps from this System is subject to any requirement by the County for a public need or health emergency, the County shall have the right to take priority over the Developers as to any such water [or sewer] taps so required . . . ."  *Id.* at ¶ 13.  Except for the sale provision, the developers needed prior approval of the County to assign the PWAs.  Compl. Ex. 1 at ¶ 15; *Id.* Ex. 2 at ¶ 14.

---

> and assigns shall have the first option to purchase from the County any additional water taps up to the amount of water taps required to complete development on the Subject Properties. . . .

Compl. Ex. 1 at ¶ 10.  The Sewer PWA contains a similar provision: "In the event additional sewer taps may be allocated from this system, the Developers and their respective successors and assigns shall have the first option to purchase from the County any additional sewer taps up to the amount of sewer taps required to complete development on the Subject Properties. . . ."  *Id.* Ex. 2 at ¶ 10.

On September 7, 1995, PSRP acquired Frall's interest in the real property that was subject to the PWAs.  Compl. ¶ 21.  Frall retained its right to reimbursement under the PWAs.  *Id.*  On August 11, 1999, the County and the developers executed a Second Amendment[3] to the PWAs.  Compl. Exs. 3-4.  As a result of these amendments, 108 additional water taps and 50 sewer taps were allocated to the developers.  *Id.*  In the amendments, the County recognized the assignment of all Frall's rights under the PWAs to PSRP.  *Id.*

In February 2002, the County amended its Water and Sewer Rules and Regulations.  Resolution No. 02-04 provides that "[t]he Director of the Division of Utilities and Solid Waste Management shall reserve fifteen percent (15%) of the capacity of each water and sewer system for public buildings and health hazard areas." Def.'s Supp. Mem. Ex. 1.  In August 2003, Frall and PSRP asked the Division of Utilities and Solid Waste Management for Frederick County ("DUSWM") about the sewer and water capacity for some of their undeveloped properties at Manorwood and Harvest Ridge.  Compl. ¶ 32.  DUSWM informed Frall in September 2003 that inadequate water and sewer capacity existed for additional developments.  *Id.* ¶ 33.  Although DUSWM's conclusion rested on the County's 15% reservation of water and sewer capacity, DUSWM

---

[3] A 1998 amendment to the PWAs reallocated several water and sewer taps among the developers.  Def.'s Supp. Mem. Ex. 2. at 2.

4

also explained that even without the reservation, water capacity was insufficient to meet current needs.  Def.'s Supp. Mem. Ex. 2 at 5-6.  Frall objected to including the County's reservation in the analysis.  Def.'s Supp. Mem. Ex. 4.  On November 3, 2003, the County responded, informing Frall that paragraph 13 of the Sewer PWA "specifically acknowledges the ability of the County to reserve capacity for public need or health."  Def.'s Supp. Mem. Ex. 5.

On July 3, 2003, HRJV assigned Frall all of its interest in property subject to the PWAs.  Compl. ¶ 40.  Frall assigned these rights to HRA, but retained rights to future reimbursements.  *Id.* On June 30, 2004, HRJV assigned all of its rights to allocated water and sewer taps under the PWAs to Frall.  *Id.*  That same day, HRJV sent letters to the County informing it of the assignment to Frall.  Def.'s Supp. Mem. Exs. 7-8.

In May 2005, HRA filed a preliminary plan with the County for 103 housing units on the Harvest Ridge properties.  Compl. ¶ 44.  On November, 17, 2005, Frall and HRA met with DUSWM and were informed that the preliminary plans for Harvest Ridge and Manorwood would not move forward in the approval process.  *Id.* ¶ 45.  On March 23, 2006, Frall and HRA provided written notice to the County of their alleged injuries and claims.  Def.'s Supp. Mem. Ex. 3.

On June 20, 2007, Plaintiffs sued the County.  Plaintiffs

allege three related claims: (1) breach of contract (Count II);
(2) impairment of contracts under Article I, Section 10 of the
United States Constitution (Count IV); and (3) inverse
condemnation and takings under a) the Fourteenth Amendment of the
United States Constitution (Counts III and VI) and b) Article
III, Section 40 of the Maryland Constitution (Count V) and
Article 24 of the Maryland Declaration of Rights (Counts V and
VI).[4]

II.  Analysis

The County has moved to dismiss Plaintiffs' Complaint,
arguing that: (1) Frall and HRA do not have standing to bring
suit; (2) Plaintiffs' zoning claims are not ripe; (3) Plaintiffs
fail to state a breach of contract claim; (4) Plaintiffs'
impairment of contract claim is barred by res judicata; (5)
Plaintiffs did not comply with the notice requirements of
Maryland's Local Government Tort Claims Act ("LGTCA"); and (6)
Plaintiffs' inverse condemnation and takings claims fail as a
matter of law.

A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

1. Standard of Review

The County raises its standing and ripeness arguments under
Rule 12(b)(1).  When a defendant raises a challenge to the

---

[4] The Court treats Plaintiffs' claims for injunctive and
declaratory relief (Counts I and VII) as potential remedies for
Counts II-VI.

factual allegations in the complaint under Rule 12(b)(1), the
burden is on the plaintiff to establish subject matter
jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v.
United States*, 945 F.2d 765, 768 (4th Cir. 1991).  The court
weighs the evidence to determine jurisdiction, and may consider
affidavits without converting the motion into one for summary
judgment. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).
Nonetheless, the court should apply elements of the summary
judgment standard and only allow the moving party relief if the
material jurisdictional facts are undisputed and the moving party
is entitled to judgment as a matter of law. *Richmond,
Fredericksburg*, 945 F.2d at 768.

2. Standing

The County argues that Frall and HRA are not parties or
assignees to the PWAs and do not have standing to enforce any
contractual rights under the PWAs.  Plaintiffs counter that Frall
is an assignee of rights under the PWAs, and HRA owns property in
the Harvest Ridge subdivision.  Therefore, Plaintiffs argue that
Frall and HRA have standing to bring contractual claims against
the County.

To have standing, a plaintiff must suffer a cognizable
injury that is causally connected to the alleged conduct and is
likely to be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S.
555, 561 (1992).  Generally, contracts cannot be enforced by or

7

against others who are not parties to the contract. *Cecilia Schwaber Trust Two v. Hartford Accident & Indem., Co.*, 437 F. Supp. 2d 485, 489 (D. Md. 2006). The focus in this case is on redressability, as the County contends that Frall and HRA do not have the ability to enforce their alleged contractual claims.

Paragraph 12 of the PWAs provides that original signatories that sold their property could allocate taps reserved under the PWAs to the purchaser of that property. Compl. Exs. 1-2 at ¶ 12. Upon this sale, the sellers must notify the County of the sale and indemnify the County from any claims arising from that sale. *Id.* Paragraph 12 is the only express provision in the PWAs for assignment, as "[e]xcept as stated in paragraph 12., above, the Developers shall not have the right to assign this Agreement without the approval of the County." Compl. Ex. 1 at ¶ 15; *id.* Ex. 2 at ¶ 14.

The County reads these two paragraphs as distinct provisions, arguing that paragraph 12 applies to reserved taps only, while the subsequent provision applies to assignments of the entire PWA. Plaintiffs view paragraph 12 as a required procedural mechanism for assignment, thus if "an assignment is not completed with the requisite notice and indemnification, *then* County approval is required." Pl.'s Supp. Mem. at 21.

The County's interpretation of the provisions at issue is the more natural reading of the contractual language. It makes

little sense to include a provision requiring express County approval for all assignments except for those made pursuant to paragraph 12, if the effect of paragraph 12 is to limit the situations when County approval is needed.  As the County explains, it "understood that the Developers would be selling their subdivided lots to builders and the builders would purchase the public water and sewer connections (or taps) at the time the building permits were obtained for each house to be built." Def.'s Reply at 4.  The practical effect of this interpretation is that County approval is needed for an assignee to have enforceable rights to the option to purchase provisions of the PWAs, but is not needed if the assignee acquires property governed by the PWAs through a sale with an original signatory.

The 1999 Amendment resulted in a complete transfer of Frall's rights under the PWAs to PSRP.  In 2003, HRJV assigned its property interests under the PWAs to Frall.  Frall then assigned these rights to HRA, but retained the right to accept taps and reimbursements from HRJV.  In June 2004, Frall was assigned HRJV's allocated taps.  Besides the 1999 Amendment, the County did not expressly approve any of these transactions.  At no point in this series of transactions did Frall regain its option to purchase or did HRA acquire such an option.  However, Frall and HRA still have interests in the property rights acquired pursuant to paragraph 12.  According to Plaintiffs, only

9

381 water taps and 379 sewer taps have been released by the
County.  Compl. ¶ 26.  This is short of the initial reserved
allocation of 400 taps.  Frall and HRA have standing to bring
contractual claims concerning this shortage.  Although the
County's motion to dismiss Frall and HRA will be denied, Frall
and HRA may not seek remedies based on the contingent option to
purchase.

3. Ripeness

Plaintiffs allege that the County has "downzoned" the
undeveloped Harvest Ridge property from residential to
agricultural and removed its access to water and sewer lines.
Compl. ¶ 54-55.  The County argues that a final decision on the
zoning status of Harvest Ridge has not been made and thus
Plaintiffs' claims are not ripe for adjudication.

A claim is ripe for judicial review if there is a legal
controversy that is "definite and concrete."  *Aetna Life Ins. Co.
v. Haworth*, 300 U.S. 227, 240-41 (1937).  In determining
ripeness, courts consider "the fitness of the issues for judicial
decision and the hardship to the parties of withholding court
consideration."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149
(1967).  A claim is particularly fit for adjudication if it is a
purely legal question that does not depend on a particular
factual scenario.  *Id.*  Hardship is determined by examining the
imminence and degree of hardship the party seeking relief will

suffer if judicial review is delayed.  *Newport News Shipbuilding & Dry Dock Co. v. Dir., Office of Workers' Comp. Programs*, 474 F.3d 109, 112 (4th Cir. 2006).

The County has voted to re-zone the Harvest Ridge property, but this appears to be an interim decision that has not been finalized.  Pl.'s Supp. Mem. Ex. B.   According to Eric Soter, the Acting Director of the County's Planning Division, the undeveloped Harvest Ridge property has retained the same residential zoning classification since 1995.  Eric Soter Decl. ¶¶ 3-4.  As the property has not been re-zoned and a final decision on the zoning classification does not seem imminent, Plaintiffs' claims concerning the "downzoning" of the Harvest Ridge property are not ripe.  Although the motion to dismiss for lack of subject matter jurisdiction will be denied, Plaintiffs may not seek any relief based on the alleged re-zoning of the Harvest Ridge property.

B. Motion to Dismiss for Failure to State a Claim

1. Standard of Review

Under Rule 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

The court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted). Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965.

Although the notice-pleading requirements of Rule 8(a)(2) are "not onerous," the plaintiff must allege facts that support each element of his claim. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any incorporated documents. *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998). The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action. *Id*.

2. Breach of Contract

The County argues that Plaintiffs' breach of contract claims

fail because they were offered the first option to purchase under the PWAs and Plaintiffs have failed to demonstrate that the County has failed to release taps in violation of the PWAs. Plaintiffs counter that although the County offered them a first option to purchase, the County has acted in bad faith by deliberately delaying performance of their contractual obligations.

Maryland courts follow the objective theory of contracts, interpreting the plain contractual language to discern the intent of the parties at formation. *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (Md. 2006). Under this test, a court must analyze the language to determine what a reasonable person in the parties' position would have meant when the agreement was effectuated. *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1311 (Md. 1985). "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Id.*

Paragraph 13 of the PWAs provides that allocation of water or sewer taps is "subject to any requirement by the County for a public need or health emergency, [and] the County shall have the right to take priority over the Developers as to any such water [or sewer] taps so required." Compl. Exs. 1-2 at ¶ 13. The County argues that this language allows it to set aside capacity

13

without consent of other parties to the PWAs.  Plaintiffs
maintain that the existence of the provision itself does not
allow the County to reserve capacity without explanation.

Given the plain language of paragraph 13, it would be
reasonable to defer to the County's rationale for reserving
capacity if the County had provided an explanation.  However, the
County has not provided any basis for its reservation other than
that a "public need or health emergency" is "unpredictable."
Def.'s Reply at 17.  The fact remains that the County is
withholding taps and the Plaintiffs claim a right to those taps.
Thus, dismissal of Plaintiffs' breach of contract claim is
premature.

Plaintiffs acknowledge that they exercised the first option
to purchase pursuant to the Second Amendment to the PWAs.  As
discussed previously, PSRP is the only party that may rely on
this provision.  That PSRP exercised the right to purchase
additional taps does not mean that the County may impede PSRP's
access to the taps without explanation.  Treating PSRP's
allegations as true, PSRP has adequately stated a breach of
contract claim as to the County's violation of the right to
purchase provision of the PWAs.

3. Impairment of Contracts

The County argues that Plaintiffs' impairment of contract
claims are barred by res judicata.  Plaintiffs contend that the

Court's previous dismissal of the impairment claims was not on the merits, and thus not final for purposes of res judicata.

Res judicata bars the relitigation of claims that were or could have been raised in an earlier judicial proceeding on the merits. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  For the doctrine of res judicata to apply, three factors must be met: (1) a final judgment on the merits in a prior suit; (2) an identity of cause of action in the earlier and later suit; and (3) an identity of parties or their privies in the two suits.  *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981).  The dismissal of a claim under Rule 12(b)(6) is a judgment on the merits.  *Federated Dep't Stores*, 452 U.S. at 399 n.3.

This Court dismissed Plaintiffs' impairment of contract claim in a previous suit against the County.  *Frall Developers, Inc. v. Board of County Comm'rs*, No. WDQ-06-1281, slip op. at 12 (D. Md. Sept. 7, 2006).  Frall, PSRP, HRA, and the County were also the only parties in the previous suit.  As to the identity of claims inquiry, the Fourth Circuit has adopted the transactional approach: "the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986). Plaintiffs' impairment of contract claim in the present suit

rests on the same ground as in the previous suit--Resolution No. 02-04 impairs the PWAs.[5]  Accordingly, Plaintiffs' impairment of contracts claim is barred by res judicata.

4. Takings and Inverse Condemnation Claims

a. LGCTA as a Procedural Bar to Plaintiffs' Maryland Constitutional Claims

The County asserts that Plaintiffs did not comply with the notice provisions of the LGTCA, and thus Plaintiffs' Maryland constitutional claims are barred.  Plaintiffs counter that notice is not required for takings claims, but alternatively contend that they provided adequate notice of their claims pursuant to the LGTCA.

Plaintiffs argue that a takings claim is not a tort, but rather "an exercise of a constitutional right."  Pl.'s Supp. Mem. at 33.  Plaintiffs therefore argue that the LGTCA does not apply to their takings claims.  Maryland courts have not excepted any constitutional torts from the LGTCA.  *See Ashton v. Brown*, 339 Md. 70, 107 n.19, 660 A.2d 447, 465 n.19 (Md. 1995).  Plaintiffs' citations to cases from other jurisdictions are not applicable to claims brought under the Maryland LGTCA.  *Nationwide Mut. Fire Ins. Co. v. Wash. Suburban Sanitary Comm'n*, 170 F. Supp. 2d 570, 572 n.2 (D. Md. 2001).  Therefore, the LGTCA applies to

_____

[5] Although Plaintiffs added the County's interim decision to re-zone the undeveloped Harbor Ridge property, this issue is not ripe, and therefore was not considered in resolving the res judicata effect of the Court's prior decision.

Plaintiffs' takings claims.

Under the LGTCA, potential claimants must give written notice of the impending claims to an appropriate local government official within 180 days of the alleged injury.  Md. Code Ann., Cts. & Jud. Proc. § 5-304 (West 2007).  "LGTCA notice requirements are a condition precedent to maintaining an action against a local government or its employees to the extent otherwise not entitled to immunity under the LGTCA."  *Rios v. Montgomery County*, 386 Md. 104, 127, 872 A.2d 1, 14 (Md. 2005). Potential claimants must strictly or substantially comply with the notice requirements of the LGTCA.  *Id.*

Plaintiffs contend that their state constitutional torts claims did not accrue until the November 17, 2005 meeting with DUSWM, and therefore their March 23, 2006 letter to the County complied with the notice provisions of the LGTCA.  The County argues that Plaintiffs' claims accrued when they received the September 2003 DUSWM analysis concerning water and sewer capacity for the undeveloped Manorwood property, and thus Plaintiffs' March 2006 letter was untimely.

In its September 2003 analysis, DUSWM stressed that it was only addressing a hypothetical scenario involving the tap capacity for the undeveloped Manorwood property.  Over the next several years, Plaintiffs allege that they offered to expand capacity by deepening existing wells and constructing new wells.

17

It was not until the November 17, 2005 meeting with DUWSM that Plaintiffs were informed that water and sewer capacity was insufficient for the Manorwood and Harvest Ridge properties because of the fifteen percent reservation.  Plaintiffs further allege that the County then requested that to receive preliminary approval of these properties, Plaintiffs would have to finance an expansion of existing facilities to meet their needs.  James M. Frey Decl., June 22, 2006, ¶ 10.  The March 2006 letter to the County was to the appropriate County official.  Viewing Plaintiffs' allegations as true and treated in the most favorable light, Plaintiffs complied with the notice provisions of the LGTCA.

b. Takings and Inverse Condemnation Claims

The County argues that Plaintiffs' takings and inverse condemnation claims (Counts III, V, and VI) fail as a matter of law because Plaintiffs do not have a protected property interest. Plaintiffs disagree, asserting that their contractual rights under the PWAs are property interests that cannot be deprived without just compensation from the County.[6]

---

[6] An inverse condemnation is one in "which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted," i.e., it is the reverse of a condemnation proceeding.  *United States v. Clarke*, 445 U.S. 253, 257 (1980).  Plaintiffs' takings and inverse condemnation claims (Counts III, V, and VI) are based on alleged violations of due process under the Fourteenth Amendment of the United States Constitution, Article III, Section 40 of the Maryland Constitution, and Article 24 of the Maryland Declaration

The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.[7] To establish a takings claim, a plaintiff must establish that the property interest alleged is constitutionally cognizable. *Gardner v. City of Balt. Mayor and City Council*, 969 F.2d 63, 68 (4th Cir. 1992). Although a breach of contract claim is not by itself a constitutional due process violation, *Coastland Corp. v. Currituck County*, 734 F.2d 175, 178 (4th Cir. 1984), contractual rights may be property interests subject to a state's power of eminent domain. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 19 n.16 (1977).

The PWAs provide Plaintiffs with a right to water and sewer taps, subject only to a public need or health emergency. Plaintiffs do not maintain that they have a protected property interest in the sewer and water treatment facilities themselves.

---

of Rights. In all three counts, Plaintiffs allege that the County deprived them of their contractual rights under the PWAs and conditioned permitting on making improvements to the County's treatment facilities, which resulted in a deprivation of Plaintiffs' property without just compensation.

[7] The Takings Clause is made applicable to the states by the Fourteenth Amendment. *Chicago, B. & Q. Ry. Co. v. City of Chicago*, 166 U.S. 226, 239 (1897). Maryland courts interpret the Fourteenth Amendment, Article III, Section 40, of the Maryland Constitution, and Article 24 of the Maryland Declaration of Rights to have the same meaning and effect. *Neifert v. Dep't of Env't*, 395 Md. 486, 516 n.33, 910 A.2d 1100, 1118 n.33 (Md. 2006); *see also Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 622-23, 805 A.2d 1061, 1072 (Md. 2002).

Rather, Plaintiffs contend that the County has appropriated their contractual rights to the taps by claiming a fifteen percent reservation and by requiring them to make improvements to the existing facilities for approval of their developmental plans to go forward.

The County cites several cases to support its contention that Plaintiffs do not have a protected property interest in access to water and sewer services. *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275 (4th Cir. 1998); *Neifert v. Dep't of Env't*, 395 Md. 486, 910 A.2d 1100 (Md. 2006). In *Front Royal*, the Fourth Circuit determined that a landowner's "inchoate" property interest in public sewer service was not a constitutionally protected property interest. *Front Royal*, 135 F.3d at 285-87. Similarly, in *Neifert*, the Court of Appeals found that access to sewer service did not qualify as property under either the Maryland or federal Constitutions. *Neifert*, 395 Md. at 522-23, 910 A.2d at 1121-22. The County's reliance on these cases is misplaced. In neither case was there a prior contractual relationship between the parties and therefore an allegation that the governmental entity appropriated contractual rights. Plaintiffs in the present case have sufficiently alleged that their contractual rights are bound up with traditional property rights to state a constitutionally protected interest.

Plaintiffs contend that the County's appropriation and demand of improvements to the existing sewer and water system are compensable exactions.  Exactions are "land-use decisions conditioning approval of development on the dedication of property to public use." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 702 (1999).  As the County is not requiring Plaintiffs to dedicate any land as a condition for development of the Manorwood and Harvest Ridge properties, there can be no exaction.

Plaintiffs also allege that the County's actions deprived them of all beneficial use of their undeveloped property.  Compl. ¶¶ 90, 107, 117.  A regulatory taking is one that "goes too far," *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922), or more specifically, a regulatory action that completely deprives landowners of "*all* economically beneficial uses" of their property.  *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).  Plaintiffs allege that the County's appropriation of their contractual property interest and the County's demand that Plaintiffs improve existing facilities as a condition for preliminary approval of their properties has forestalled any development of their real property interests for the foreseeable future--a total economic deprivation of their land.  Accordingly, Plaintiffs' takings and inverse condemnation claims survive the

County's motion to dismiss.[8]

III. Conclusion

For the reasons discussed above, the County's motion to dismiss will be granted in part and denied in part.


November 20, 2007                            /s/
Date                        William D. Quarles, Jr.
                            United States District Judge

---

[8] As Plaintiffs' claims concerning the re-zoning of the Harvest Ridge property are not ripe, Plaintiffs' contention that they have a vested property right in the zoning classification of Harvest Ridge will not be addressed.